Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| WILLIAM GONZÁLEZ SOLÍS<br><br>Apelado<br><br>v.<br><br>ALL TOOLS, INC.<br><br>Apelante | KLAN202400913 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2022CV01251<br><br>Sobre: Despido injustificado (Ley Núm. 80) y Otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de marzo de 2025.

Comparece ante nosotros All Tools, Inc. (All Tools o apelante) y nos solicita la revocación de la *Sentencia* notificada el 4 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró ha lugar la querella incoada por el señor William González Solís (señor González Solís o apelado) por entender que, su despido fue injustificado y, en su consecuencia, concedió los remedios solicitados.

Por los fundamentos que exponemos a continuación, revocamos el dictamen apelado.

**I.**

El 24 de abril de 2022, el señor González Solís presentó una querella sobre despido injustificado en contra de su patrono, All Tools, Inc. En ella, solicitó un resarcimiento equivalente al total de los cómputos de la indemnización que dispone la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (29 LPRA secs. 185a y ss), una

suma igual al doble del importe de los daños que el patrono causó y una suma equivalente al 25% de la cuantía total adjudicada para el pago de honorarios de abogado. Alegó que, fue notificado sorpresivamente por su patrono de su despido porque fue a trabajar bajo los efectos de alcohol. El señor González Solís negó dichas aseveraciones y manifestó que, durante los más de treinta años en los que laboró para la compañía, no incurrió en conducta impropia y tampoco violó las normas de conducta en el empleo. Alegó que, por el contrario, su desempeño fue eficiente y ejecutado con la mayor competencia. Expuso que, se trataba de un plan para despedirlo de su empleo, sin justa causa, y que las razones para justificar el despido eran además discriminatorias por su edad.

All Tools presentó su contestación a la querella, en la que, aceptó haber sido patrono del señor González Solís, quien se desempeñó como supervisor de la empresa, la cual se dedica a la venta de artículos de ferretería al por mayor. Indicó que, el despido ocurrió el 26 de abril de 2021 y se debió a que el apelado se presentó a trabajar bajo los efectos de bebidas alcohólicas. Sin embargo, alegó que el despido no fue sorpresivo porque el señor González Solís había sido amonestado en varias ocasiones e incluso, había sido advertido que, de volver a incurrir en conducta contraria al reglamento, sería despedido por representar un riesgo para sí mismo y sus compañeros. Alegó, además que, no incurrió en discrimen contra el querellante puesto que el despido estuvo motivado por no cumplir las reglas de la empresa y los deberes de los empleados. En particular, expuso que, no se le permite a ningún empleado asistir a trabajar bajo los efectos de alcohol y tampoco que, como supervisor, se incite a los demás empleados a presentarse al trabajo con bebidas alcohólicas e ingerirlas durante horas laborables. Para ello, alegó que el señor González Solís recibió el reglamento de la

empresa de la parte querellada que prohibía asistir a trabajar bajo los efectos de bebidas alcohólicas.

Así las cosas, el 16 de febrero de 2023, All Tools presentó un petitorio sumario, mediante el cual, solicitó la desestimación de la querella.[1] Con ello procuraba establecer que, no había controversia en cuanto a que el despido del señor González Solís estuvo justificado, puesto a que obedecía proteger la seguridad de las operaciones de All Tools.

Subsiguientemente, el apelado presentó su *Oposición a solicitud de sentencia sumaria*. En la misma, negó haber hecho uso de bebidas alcohólicas durante horas laborales y haber acudido en estado de embriaguez a su empleo. Alegó que, All Tools no produjo documentación suficiente que apoyara su postura, en cuanto a que, el patrono amonestó al empleado de forma verbal y luego por escrito. Además, reiteró que su despido fue injustificado ya que no se realizó una investigación adecuada.

En reacción, el apelante presentó *Réplica a oposición a sentencia sumaria y oposición a solicitud de sentencia sumaria*. En síntesis, mediante dicho escrito resaltó la disposición del patrono en ayudar al señor González Solís a enfrentar sus problemas y reafirmó la razón que dio motivo al despido.

Examinados los escritos de ambas partes, el 6 de junio de 2023, el foro primario declaró parcialmente con lugar la *Moción Solicitando Sentencia Sumaria* presentada por el apelante y desestimó la causa de acción de discrimen por edad presentada por el apelado. En su dictamen, el TPI consignó treinta hechos incontrovertidos. A su vez, el foro primario determinó que, existían

---

[1] Junto a su petitorio incluyó los siguientes documentos: Exhibit 1-Declaración Jurada del señor Miguel A. Ramos Alvarado; Exhibit 2-Deposición del señor William González Solís; Exhibit 3-Reglamento de All Tools, Inc.; Exhibit 4-Documento trámite, Protocolo Violencia Doméstica; Exhibit 5-Adiestramiento de materiales peligrosos; Exhibit 6-Memorando del 16 de febrero de 2021 dirigido al señor González Solís y Exhibit 7-Carta del 26 de abril de 2021 suscrita por el señor Miguel Ramos.

hechos en controversia en cuanto a la causa de acción por despido injustificado. Entiéndase, sobre si el señor González Solís consumía bebidas alcohólicas durante horas laborales; si se presentó a trabajar en estado de embriaguez; si instaba en algunas ocasiones a otros empleados de All Tools, Inc. a ingerir bebidas alcohólicas y; si fue sorprendido por su supervisor en ese estado. Tras culminar ciertas incidencias procesales que no resultan necesarias pormenorizar, el apelante solicitó, mediante moción presentada el 2 de agosto de 2024 y en anticipación a la celebración del juicio en su fondo, que el TPI diera por admitidos los hechos adjudicados mediante la *Sentencia Parcial* emitida el 6 de junio de 2023. Ello, para delimitar los asuntos ya adjudicados por el foro primario. El TPI declaró ha lugar el referido petitorio dando por admitidos los treinta hechos consignados en el referido dictamen.

Así las cosas, el TPI celebró el juicio en su fondo durante el cual testificaron, el señor González Solís, el señor Javier López Reyes y el señor Miguel Ramos Alvarado, respectivamente. A continuación, se incluye un resumen de la prueba testifical.

### Testimonio del señor William González Solís[2]

El desfile de prueba comenzó con el testimonio del apelado, el señor William González Solís, quien declaró que, trabajó treinta y cuatro años para All Tools. Con relación a la razón expuesta por el patrono para su despido, el apelado expresó que nunca bebía en su trabajo y que tampoco se le entregó evidencia de que consumía alcohol en el empleo. Sin embargo, durante el contrainterrogatorio, el señor González Solís reconoció haber sido suspendido por alcoholismo dos meses antes de ser despedido, aun cuando anteriormente alegó no haber sido objeto de medida disciplinaria alguna. Afirmó, además, que previo al 16 de febrero de 2021, fecha

---

[2] Transcripción de la prueba oral, págs. 22-68.

en que fue suspendido, el señor Miguel Ramos Alvarado, ya se había dirigido a él verbalmente con relación a la conducta que propició la amonestación y le recomendó acudir a Alcohólicos Anónimos. El apelado respondió que no recordaba haber consumido bebidas alcohólicas durante horas laborales en el comedor de All Tools, al igual que, afirmó no recordar que el señor Ramos Alvarado entrara al comedor mientras ingería alcohol. No obstante, afirmó haberle expresado a su supervisor que le había fallado.[3]

### Testimonio del señor Javier López Reyes[4]

La prueba de la parte apelante comenzó con el testimonio del señor Javier López Reyes, quien fue compañero de trabajo de la parte apelada en All Tools y previamente miembro de la Policía de Puerto Rico. Este declaró haber observado en varias ocasiones una conducta hostil de parte del señor González Solís, a la par que observó que este tenía ojos rojizos, la voz pesada y fuerte olor a alcohol.[5] Apoyó su testimonio en su experiencia como agente de la policía. Además, afirmó haber recibido llamadas telefónicas durante horas laborables de parte del apelado solicitándole bebidas alcohólicas. Narró cómo la conducta del señor González Solís le afectaba porque tenía que detenerse a comprar cervezas y tenía que usar su propio dinero para la compra.

No obstante, a preguntas de la parte apelada, el señor López Reyes declaró no haber notificado a su patrono la conducta observada en el señor González Solís, quien era su supervisor y que éste le ordenaba comprar bebidas alcohólicas. Expresó, no haber recibido memo alguno luego de haber informado que compró bebidas alcohólicas durante el periodo de su turno y tampoco haber

---

[3] *Íd.* a la pág.60.
[4] *Íd.* a la págs.75-107.
[5] *Íd.*, págs. 83-84.

sido advertido de que su conducta estaba prohibida por el reglamento.

### Testimonio ofrecido por el señor Miguel Ramos Alvarado[6]

Por último, testificó el gerente de operaciones de All Tools, el señor Miguel Ramos Alvarado. Su testimonio estuvo relacionado a la conducta de la parte apelada que fue motivo de su despido en abril de 2021. Según el señor Ramos Alvarado, el apelado era una "persona distinta" en ciertas ocasiones.[7] En estas se podía observar que tenía ojos rojos y se le hacía difícil comunicarse. Declaró, además que, el problema de alcoholismo afectaba las operaciones de la empresa puesto que, el señor González Solís detenía las entregas. El testigo también expresó que, se realizaron acercamientos para que el apelado rectificara su conducta, entre los cuales, se encontraba un memorando donde se le impuso una medida disciplinaria de cinco días de suspensión de empleo y sueldo. Aseveró que, dicha medida estaba justificada por el reglamento de All Tools. Además, afirmó haber visto al apelado con una cerveza en la mano, durante horas laborables en las facilidades de la empresa, pero aceptó que dicho suceso no fue documentado por escrito.

Después de celebrada la vista, el TPI emitió el dictamen apelado, el 4 de octubre de 2024. En el referido dictamen el foro primario concluyó que, All Tools no presentó prueba sobre cómo la conducta del apelado puso en riesgo el orden, la seguridad y la eficiencia de la corporación y, en consecuencia, determinó que el despido del señor González Solís fue uno arbitrario e injusto. Ante ello, emitió las siguientes determinaciones de hecho:

1. All Tools, Inc. es una compañía puertorriqueña, familiar, dedicada a la venta de artículos de ferretería al por mayor, y que tiene como clientes a ferreterías de Puerto Rico. Entre estas, National Lumber, Maderas 3C y Caguas Commercial.
2. Al momento la compañía tiene un total de 91 empleados. Las posiciones de los empleados fluctúan desde

---

[6] *Íd.* a las págs. 108-164.
[7] *Íd.*, pág. 124.

empleados de oficina, vendedores, empleados de almacén y acarreadores, entre otros. La edad de éstos fluctúa desde los 18 hasta los 76. El querellante no era el mayor en términos de edad.

3. El señor González Solís comenzó a trabajar para All Tools, Inc., en junio de 1986.

4. El señor González Solís comenzó a trabajar en All Tools, Inc., en la posición de empleado de almacén.

5. El señor González Solís recibió el Reglamento de Personal de All Tools, Inc., al igual que el Protocolo de Violencia Doméstica y Hostigamiento Sexual.

6. El señor González Solís estuvo relacionado con otra empleada de la compañía, la Sra. Yvette Morales.

7. La Sra. Yvette Morales falleció el 11 de enero de 2019, lo que afectó mucho al señor González Solís.

8. En las reuniones con el Querellante, el señor Ramos le hablaba de su trabajo y de los problemas personales que tenía que afectaban su trabajo.

9. El Sr. Miguel Ramos era el supervisor del Querellante y es una persona llevadera.

10. El presidente de la compañía, el Sr. Roberto Agresar, a quien el Querellante describe como buena persona, también se reunió con él para tratar de ayudarlo.

11. El Querellante le dijo al Sr. Ramos que estaba resolviendo su problema familiar.

12. El Querellante se desempeñaba como empleado de almacén en un turno de 7:00 a.m. a 4:00 p.m.

13. El 16 de septiembre de 2020, la compañía creó un nuevo turno de 2:00 p.m. a 10:00 p.m. y les ofreció el nuevo turno a sus empleados.

14. Para reclutar la fuerza trabajadora para el nuevo turno, el señor Ramos primero auscultó entre los empleados si les interesaba el nuevo turno.

15. El Querellante le solicitó al Sr. Miguel Ramos que lo cambiara al turno de 2:00 p.m. a 10:00 p.m.

16. Por motivo de la antigüedad del Querellante en la compañía, se le concedió el cambio de turno que solicitó y un aumento de sueldo.

17. El cambio de turno conllevó un ascenso al puesto de supervisor.

18. En su último puesto en All Tools, el Querellante supervisaba a seis (6) personas.

19. El Querellante fue suspendido de empleo y sueldo el 16 de febrero de 2021.

20. El Querellante tenía problemas en el trabajo a raíz [de los] fallecimiento[s] ocurridos en su familia.

21. Antes de que se le entregara el memorando con la suspensión de 16 de febrero de 2021, el Sr. Miguel Ramos le había traído a su atención que estaba asistiendo al trabajo bajo los efectos del alcohol.

22. El Querellante admitió que el señor Ramos le habló sobre Alcohólicos Anónimos.

23. Cuando el Patrono le entregó la amonestación de 16 de febrero de 2021, le advirtió al Querellante que tenía que corregir su conducta. El Querellante no contestó la amonestación.

24. Antes del despido, All Tools, Inc., le indicó al Querellante que tenía que resolver su situación familiar, pues le afectaba en su trabajo.

25. El Querellante no recuerda cuándo el señor Ramos lo sorprendió bebiendo en el comedor de All Tools, Inc., durante horas laborales y se sentó a dialogar con él sobre la situación, donde procedió a entregar las llaves de la compañía y decirle al señor Ramos que le había fallado.

26. En All Tools, Inc., hay empleados activos mucho mayores que el Querellante.

27. El Querellante no presentó querellas por discrimen, ni ante All Tools, Inc., ni ante el EEOC, ni ante el Departamento del Trabajo.

28. El Querellante no solicitó al Patrono que asignara más empleados para ayudarlo.

29. Las muertes de los familiares del Querellante, su pareja y su señora madre, continúan afectándole a diciembre de 2022.

30. El Querellante fue despedido el 26 de abril de 2021.

31. El Querellado no poseía protocolo para identificar si su personal se encontraba trabajando bajo los efectos de alcohol.

32. El reglamento presentado como exhibit por All Tools, Inc., no es el mismo reglamento que se le entregó al querellante.

33. No existe prueba documental o demostrativa que evidencie que el Querellante consumía bebidas alcohólicas en su lugar de trabajo, o llegaba al mismo bajo los efectos de alcohol.

34. No existe evidencia documental ni demostrativa que pruebe que el Querellante ordenó comprar, o compró, bebidas alcohólicas durante su horario de trabajo.

35. El Querellante nunca aceptó las imputaciones de patrono sobre el consumo o compra de bebidas alcohólicas dentro de su horario laboral.

36. El Querellado no posee mecanismos de pruebas científicas ni pericial para poder diferencial entre síntomas de depresión y síntomas de embriaguez.

37. El Patrono no documentó ningún evento, de manera precisa, en donde el Querellante haya sido visto, consumiendo bebidas alcohólicas. A pesar de que el Sr. Ramos Alvarado testificó haberlo visto consumiendo una cerveza en el área de "Break" no existe ninguna documentación ni por escrito, ni en el expediente del Querellado que recoja dicho suceso.

38. El Querellado otorgó dos memorandos al Querellante por alegadamente encontrarse trabajando bajo los efectos de alcohol. Ambos memos carecen de detalles importantes como fecha, lugar, personas que atestiguaron el evento.

39. El testigo Sr. Francisco Javier López compró bebidas embriagantes en horas de trabajo.

40. El testigo Sr. Francisco Javier López testificó que el Sr. Ramos Alvarado conocía dicha información, es decir, que compró bebidas embriagantes en horas de trabajo.

41. No existe evidencia de que el Querellante recibió memo o escrito alguno relacionado a dicha alegación en específico.

42. All Tools, Inc., carece de personal de Recursos Humanos. El Sr. Ramos Alvarado es el encargado de los expedientes de los empleados.

43. El Querellante trabaja en National Lumber desde junio de 2021.

44. El Sr. Ramos Alvarado no posee conocimientos especializados en psicología, síntomas de depresión, ni ha tomado adiestramientos sobre como identificar señales de consumo de alcohol en una persona.

45. El salario del Querellante era DOS MIL OCHENTA DOLARES ($2,080.00) mensuales.

En su dictamen, el foro primario aplicó por analogía los requerimientos establecidos en la *Ley para Reglamentar las Pruebas Para la Detección de Sustancias Controladas en el Sector Laboral Privado,* Ley Núm. 59 de 8 de agosto de 1997, según enmendada

(Ley 59). Destacó que, el patrono no presentó prueba científica o documental para sostener la justa causa por el despido del señor González Solís, entre otros asuntos.

Inconforme, All Tools acude ante esta Curia y señala los siguientes errores:

1. Erró el [TPI] al determinar que la Ley Núm. 80, supra, establece una presunción de que todo despido es injustificado.
2. Erró el TPI al aplicar por analogía la ley para reglamentar las pruebas para la detección de sustancias controladas en el sector laboral privado, Ley Núm. 59-1997.
3. Erró el TPI al determinar que All Tools no proveyó acomodo razonable o licencia al querellante para atender su "condición médica".
4. Erró el TPI al utilizar alegaciones de un alegado discrimen para fundamentar su sentencia, cuando el 7 de junio de 2023, dictó sentencia parcial desestimando la causa de acción de discrimen.
5. Erró en derecho el TPI al requerir evidencia científica y/o pericial para establecer que el despido del querellante estuvo justificado.
6. Erró el TPI al privar a la parte apelante de su propiedad sin el debido proceso de ley.
7. Erró el TPI al otorgarle al querellante-apelado un veinticinco por ciento (25%) por concepto de honorarios de abogado.

El 9 de enero de 2025, el señor González Solís presentó su *Oposición a Apelación*, por lo que, con el beneficio de la comparecencia de ambas partes, así como, la transcripción de la prueba oral, procedemos a resolver.

**II.**

**A. Ley Núm. 80**

La Ley Núm. 80, *supra*, se adoptó para proveer un remedio justiciero a aquellos empleados que fueron privados injustificadamente de su trabajo, el cual consiste en una indemnización para suplir sus necesidades básicas. *Segarra Rivera v. Int'l Shipping et al.*, supra. A esos efectos, la Ley Núm. 80, *supra,* le impone al patrono el pago de una indemnización o mesada, a favor de aquel empleado que es despedido, sin justa causa. *Íd.* Al mismo tiempo, el Artículo 12 de la citada ley obliga al obrero presuntamente despedido injustificadamente a solicitar remedios al amparo de la Ley Núm. 80, *supra,* dentro del plazo de tres (3) años, contados a

partir de la fecha de su despido. 29 LPRA sec. 185(l). Cabe señalar que, ante el silencio de la Ley Núm. 80, supra, relativo a cómo habrá de interrumpirse el referido término, sus efectos o si el mismo es susceptible de congelación, en *Díaz Santiago v. International Textiles,* 195 DPR 862, 876 (2016), el Tribunal Supremo resolvió que:

> [...] la notificación al patrono de la presentación de una querella por *discrimen* ante la Unidad Antidiscrimen tendrá el efecto de *interrumpir* el término prescriptivo de una reclamación por despido injustificado dispuesto en la *Ley 80* si la notificación de la querella cumplió con todos los requisitos de una reclamación extrajudicial efectiva, es decir: (1) si fue oportuna (la reclamación ocurrió dentro del término prescriptivo de tres (3) años que dispone la Ley 80); (2) si fue realizada por una persona con legitimación; (3) si el medio utilizado fue idóneo, y finalmente, (4) si existía identidad entre el derecho reclamado y el afectado por la prescripción.

> Sobre este último requisito, disponemos que existe identidad entre el despido discriminatorio y una reclamación por despido injustificado, debido a que el despido injustificado es un elemento esencial de la causa de acción por despido discriminatorio. Así, hemos reiterado que para que prospere una reclamación por discrimen el empleado debe haber probado el hecho básico de que fue despedido sin justa causa.

Sobre lo que constituye justa causa para el despido, el Artículo 2 de la Ley Núm. 80, 29 LPRA sec. 185b, enumera varias circunstancias que afectan el buen y normal funcionamiento de una empresa, a saber:

> Se entenderá por justa causa para el despido de un establecimiento:
>
> (a) Que el obrero siga un patrón de conducta impropia o desordenada.
>
> (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
>
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
>
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento.
>
> (e) Los cambios tecnológicos o de reorganización, o la naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

Sin embargo, esas seis instancias son sólo ejemplos de escenarios que pueden considerarse justa causa para el despido. *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 930 (2015). La Ley Núm. 80, *supra,* no pretende ni puede considerar "la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia." *Íd.* Por tanto, "los patronos están en libertad de adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. *Íd.,* págs. 930-931.

De otra parte, antes de la aprobación de la Ley de Transformación y Flexibilidad Laboral, el Artículo 8 de la Ley Núm. 80, *supra*, 29 LPRA sec. 185k(a), disponía que "el patrono vendrá obligado(a) [sic] a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado".

Respecto a esa disposición, el Tribunal Supremo expresó en *Feliciano Martes v. Sheraton,* 182 DPR 368, 385 (2011), que lo anterior invertía el orden de la prueba en casos civiles y le imponía al patrono el peso de demostrar que el despido fue justificado. Posteriormente, en *Romero et als. v. Cabrer Roig et als,* 191 DPR 643, 652 (2014), dispuso lo siguiente:

> "[f]inalmente, para adelantar el propósito de su naturaleza reparadora, la Ley Núm. 80, *supra*, invierte el orden de la prueba en casos civiles y le impone al patrono el deber de probar *in limine* que el despido fue justificado. Si así lo prueba, el patrono no estará obligado a pagar la mesada. Véase *Secretario del Trabajo v. I.T.T.,* 108 DPR 536 (1979). Además, la Ley Núm. 80, *supra*, dispone que, en toda acción instada al amparo de esta, el patrono estará obligado a alegar en la contestación a la demanda, los hechos que dieron

origen al despido y probar que estuvo justificado para quedar eximido del pago de la indemnización que dispone esa ley. 29 LPRA sec. 185k(a). En otras palabras, la Ley Núm. 80, *supra*, establece una excepción a la norma general de derecho que dispone que, en toda reclamación judicial instada por una parte contra un demandado, sea el reclamante quien tiene la obligación de probar sus alegaciones para prevalecer en un pleito. (Cita omitida.)

No obstante, el Artículo 4.9 de la Ley de Transformación y Flexibilidad Laboral, 29 LPRA sec. 185h, enmendó el Artículo 8 de la Ley Núm. 80, *supra*, a los fines de eliminar el origen de la presunción. Cónsono con esto, el Tribunal Supremo en *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022), aclaró sobre quién recae el peso de la prueba. En lo pertinente, dispuso lo siguiente:

> Ahora bien, "para disfrutar de la presunción generada por la Ley [Núm.] 80 hace falta, como elemento de umbral, que haya habido un despido**".** *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 907. Por tal razón, "[el] demandante tiene la obligación de aportar prueba que establezca los hechos básicos que den lugar a la presunción". Íd., pág. 911.
> [...]
> Una vez activada la presunción estatutaria a favor del empleado, el patrono tiene el deber de presentar prueba para rebatir la presunción y, además, persuadir al juzgador mediante preponderancia de la evidencia. (Cita omitida.) *Ortiz Ortiz v. Medtronic*, supra, pág. 775.

Cabe destacar que, la ley aplicable es "la que estaba vigente cuando ocurrieron los hechos que dan lugar a la causa de acción". (Énfasis suprimido). *Ortiz Ortiz v. Medtronic*, supra, pág. 777.

## B. Apreciación de la prueba

Como regla general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos en relación con la prueba testifical. *Pueblo v. Negrón Ramírez,* 2024 TSPR 41, resuelto el 23 de abril de 2024. Ello, debido a que, "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Ortiz Ortiz v. Medtronic,*

supra, págs. 778-779, citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Después de todo, es el juzgador de los hechos o el jurado quien escucha la prueba testifical y evalúa el comportamiento de los declarantes. *Pueblo v. Negrón Ramírez*, supra.

De conformidad, el Tribunal Supremo de Puerto Rico ha resuelto que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Negrón Ramírez,* supra. A esos efectos, la parte que impugne la apreciación de la prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa. *Pueblo v. Cabán Torres,* 117 DPR 645 (1986).

Por otro lado, la Regla 110 (a) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110(a), dispone que "el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes". A su vez, en los casos civiles, la Regla 110(f) de las Reglas de Evidencia, 32 LPRA Ap. VI, R.110(f), establece que "la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario". Cónsono con lo anterior, el Tribunal Supremo ha resuelto que, [d]e ordinario, el *quantum* de prueba necesario para prevalecer en el ámbito administrativo es el de preponderancia de la prueba". *OEG v. Martínez Giraud*, 210 DPR 79, 93 (2022).

### III.

En su primer señalamiento de error, el apelante plantea que, el foro primario erró al determinar que la Ley Núm. 80, *supra*, establece una presunción de que todo despido es injustificado. En

esencia, la parte apelante sostiene que el despido del señor González Solís ocurrió el 26 de abril de 2021, por lo que, a raíz de las enmiendas a la Ley Núm. 80, *supra*, y el caso de *Ortiz Ortiz v. Medtronic*, supra, no le aplica la presunción a su favor. En su consecuencia arguye que, el TPI incidió al concluir que la ley aplicable a esta causa de acción establece una presunción que todo despido es injustificado.

Por su parte, el señor González Solís alega que, las disposiciones de la Ley Núm. 4-2017, *supra*, no tienen efecto retroactivo. De manera que estas, no aplican a aquellos empleados que fueron contratados antes de su vigencia y, en tales circunstancias, la carga probatoria del despido injustificado recae sobre el patrono.

Conforme la normativa antes expuesta, el estado de derecho previo, establecía que, en las querellas por despido injustificado, incoadas al amparo de la Ley Núm. 80, *supra*, no aplicaba la tradicional regla del peso de la prueba. Por ende, no era el promotor de la acción quien tenía la responsabilidad de probar su caso, ya que este gozaba de una presunción a su favor. Sin embargo, luego de las enmiendas a la ley en cuestión, por virtud de la Ley Núm. 4-2017, *supra*, y la jurisprudencia que interpretó la materia, se eliminó la presunción a favor del empleado despedido.

En el presente caso no está en controversia que, el señor González Solís fue despedido de su empleo en All Tools, Inc. el *26 de abril de 2021*. (énfasis nuestro). En dicha fecha, ya estaban en vigor las disposiciones de la Ley Núm. 4-2017, *supra*, por lo que las mismas resultan aplicables al caso. En consecuencia, era responsabilidad de la parte apelada probar que su despido fue uno arbitrario o caprichoso. De nuestro análisis sobre este particular, reconocemos que, el TPI no debió incluir en su dictamen que todo despido se presume injustificado. Sin embargo, como bien señala el

apelante, lo antes no resulta en consecuencia alguna, ya que, en este caso, el señor González Solís fue quien presentó su prueba primero durante el juicio en su fondo.

Superado lo anterior, nos corresponde determinar si el TPI incidió en su apreciación de la totalidad de la prueba y concluir que, el despido del señor González Solís fue injustificado. A esos fines, procedemos a atender los señalamientos de error en conjunto.

De la transcripción de la prueba oral surge que, la parte apelada negó en reiteradas ocasiones haber ingerido bebidas alcohólicas durante horas laborales y que, por el contrario, reconoció que en ocasiones no podía dar el "cien por ciento" en el trabajo, pero por razones distintas al uso de alcohol.[8] En esencia, mediante su testimonio, este expuso que la razón de su comportamiento era la depresión ocasionada por la muerte de varios de sus familiares.[9] Sin embargo, aun cuando expresó que, previo a su despido, nunca le entregaron evidencia alguna de que estaba consumiendo bebidas alcohólicas en el trabajo o fue reunido con varias personas para discutir los señalamientos hacia su persona,[10] también aceptó haber recibido una amonestación por tal comportamiento.[11]

Por su parte, en el turno de prueba de la parte apelante, esta presentó evidencia testifical dirigida a sostener su alegación de que el despido estuvo justificado. En parte, su prueba consistió en el testimonio de quien fuera el supervisor de la parte apelada, el señor Ramos Alvarado. Este declaró que, el señor González Solís, ingería bebidas alcohólicas durante horas laborales e, incluso, que fue observado por este teniendo este tipo de conducta en la cocina del trabajo.[12] Abundó sobre cómo este comportamiento interrumpía el

---

[8] *Íd.*, pág. 25.
[9] *Íd.*, pág. 25.
[10] *Íd.*, pág. 26.
[11] *Íd.*, págs. 63-64.
[12] *Íd.*, pág. 142.

buen funcionamiento de la empresa porque el señor González Solís no quería descargar la mercancía y asumía una actitud hostil.

Cabe destacar que, la prueba de la parte apelante fue más allá. De la transcripción de la prueba oral surge que, también declaró un compañero de trabajo, el señor López Reyes, quien expresó haber observado en la parte apelada un comportamiento hostil[13] a la par que observaba que este tenía ojos rojizos y expedía "un fuerte olor a alcohol".[14] Además, también afirmó haber visto al señor González Solís ingiriendo bebidas alcohólicas en varias ocasiones dentro del periodo de junio de 2020 a febrero o marzo de 2021[15] e, incluso, reconoció haber comprado bebidas alcohólicas como encargo del apelado.[16]

No obstante a todo lo anterior, el foro primario determinó que, el despido del señor González Solís fue uno arbitrario e injusto. En la *Sentencia* del 4 de octubre de 2024, el TPI indica que, entre la prueba presentada y creída por este, incluía el testimonio del señor González Solís, así como, la falta de evidencia que lo moviera a determinar que, en efecto, el apelado incurrió en las faltas antes señaladas. Ello, fundamentado en que, el apelante no documentó de manera precisa ninguno de los eventos antes reseñados. Así que, razonó que, como en el expediente del señor González Solís ni en algún otro documento por escrito constaban detalles específicos sobre algún suceso en donde este haya sido observado consumiendo bebidas alcohólicas,[17] no era suficiente para justificar el despido. Sin embargo, pasa por alto el foro primario que, nuestro más Alto Foro ha expresado que "al adjudicar este tipo de controversia [debemos abstenernos de] sustituir el criterio del patrono querellado

---

[13] *Íd.*, pág. 82.
[14] *Íd.*, pág. 89.
[15] *Íd.*, pág. 84.
[16] *Íd.*, pág. 93.
[17] Determinación de Hecho Núm. 37 de la Sentencia apelada. Apéndice, pág. 6.

por lo que hubiéramos hecho en su lugar". *SLG Torres-Matundan v. Centro Patología, supra*, pág. 941.

Por ello, en consideración del precedente jurídico reseñado, el patrono no tenía obligación de probar con evidencia científica o documental su causa. Añádase a ello que, el TPI no consideró la totalidad de la prueba presentada. En particular observamos que, el foro primario no incluyó en sus determinaciones de hecho la totalidad del testimonio no impugnado del señor López Reyes. De las determinaciones de hecho observamos que, en referencia a este testimonio, el TPI se limitó a consignar lo siguiente:

> 34.    No existe evidencia documental ni demostrativa que pruebe que el Querellante ordenó comprar, o compró, bebidas alcohólicas durante su horario de trabajo.
> 37.    El Patrono no documentó ningún evento, de manera precisa, en donde el Querellante haya sido visto, consumiendo bebidas alcohólicas. A pesar de que el Sr. Ramos Alvarado testificó haberlo visto consumiendo una cerveza en el área de "Break" no existe ninguna documentación ni por escrito, ni en el expediente del Querellado que recoja dicho suceso.
> 39.    El testigo Sr. Francisco Javier López compró bebidas embriagantes en horas de trabajo.

Sin embargo, como bien se destaca en el *Alegato Suplementario* del apelante, claramente surge del testimonio del señor López Reyes, no impugnado, lo siguiente:

> [...]
> P:      Sí, como no. Un segundito. ¿Qué conducta, si alguna, usted observó eh... cuando usted cargaba sus camiones, del Sr. William González Ortiz?
> R:      Bueno, una conducta hostil y me decía que no, que... que no iba a... que no iba a cargar el truck.
> P:      ¿Cuándo ocurrió eso?
> R:      Ocurría por las tardes. Varias veces por las tardes, cuando llegaba a esa hora, 3:30 a 4:00, que en muchas ocasiones me decía que no, que... que no iba a cargar. "Al carajo a cargar".
> P:      ¿Cómo?
> R:      "Al carajo a cargar", y yo pues, me iba.
> P:      Okay. ¿Y qué usted observaba cuando él le decía esas palabras?
> (Transcripción, pág. 82, líneas 16-24 y pág. 83, líneas 1-[6])
> P:      ¿Qué observaba usted en cuanto a él?
> R:      Pues, cuando me expresaba eso, lo observaba con ojos rojizos, la voz media pesada y pues, yo procedía a irme porque yo no voy a... a... a. desobedecer unas instrucciones, pues me iba.
> P:      ¿Y para qué año ocurría eso?
> R:      Eso ocurría desde que yo comencé. Yo comencé más o menos en... en junio del 2020. Hasta el 2021, por ahí, antes de...

P:      ¿En qué año usted comenzó?
R:      En el 2020.
P:      Okay. Y eso comenzó en junio del 2020, cuando usted comenzó, ¿hasta cuándo?
R:      Hasta febrero o marzo de 2021.
P:      Okay. ¿Y cómo le consta a usted lo que usted dijo, que lo veía con ojos rojizos...? Eh... Eso que usted describió, ¿cómo le consta a usted eso?
(Transcripción, pág. 83, líneas 22-24 y pág. 84, líneas 1-15)
El señor López declaró que lo antes expuesto le constaba también por su experiencia cuando estuvo en la Policía de Puerto Rico. (Transcripción, pág. 85, líneas 4-11) Sobre este particular, el testigo declaró lo siguiente:
P:      ¿Qué experiencia?
R:      La expe... La experiencia cuando estuve en la policía.
P:      ¿Qué experiencia usted tuvo con el eh...cuando estu...estuvo en la... en la policía?
R:      Experiencia esto...interviniendo con personas que estaban bajo los efectos de bebidas embriagantes.

[...]

Es importante también señalar que cuando González Solís interactuaba con él, notaba que éste tenía "la voz pesada, con dificultad". (Transcripción, pág. 87, líneas 11-13 y pág. 88, línea 3) López Reyes declaró que él se encontraba a dos (2) o tres (3) pies de distancia de González Solís cuando recibía sus instrucciones. (Transcripción, pág. 88, líneas 18-22) Expresó López Reyes que él notaba que González Solís tenía los ojos rojizos y que "daba un fuerte olor a alcohol". (Transcripción, pág. 88, líneas 23-24 y pág. 89, líneas 1-4). También indicó el testigo que en varias ocasiones observó a González Solis bajo los efectos de bebidas embriagantes. (Transcripción, pág. 90, líneas 6-12)
Por otro lado, es importante señalar que López Reyes sostuvo que mientras iba de regreso de su ruta a All Tools, el señor González Solís lo llamaba por teléfono para que le llevara bebidas alcohólicas. Sobre lo antes expuesto, López Reyes declaró lo siguiente:
P:      ¿Y qué recuerda usted sobre este particular?
R:      Bueno, que estando yo de camino, dirigiéndome hacia All Tools, recibía llamadas del tele... del teléfono mío, del señor William, que si estaba cerca y yo le di[g]o que estaba...estaba pronto a llegar.
P:      ¿Y qué le decía el señor William a usted?
R:      Que...Que estaba seco, que si podía llevarle algo frío.
P:      ¿Y a que se refería que llevarle algo frío?
R:      Cerveza.
(Transcripción, pág. 92, línea 24 y pág. 93, líneas 1-13)
P:      Okay. ¿Qué le solicitaba el Sr. William González a usted?
R:      Que le llevara cervezas.
P:      ¿Y qué marcas de cervezas le gustaba al Sr. William González?
R:      Michelob...Lo que hubiese disponible o frío en ese momento. Michelob o Coors Light.
P:      ¿En cuántas ocasiones ocurrió eso?
R:      En varias ocasiones.
P:      Okay. ¿Y a qué hora ocurría eso?
R:      Por las tardes.

[...]

P:      Conteste, por favor. Que la pregunta es, ¿cómo la conducta del Sr. William González Solís afectaba su trabajo como chofer?

R:      Me afectaba porque tenía que detenerme a comprar cerveza para... para traérselas a él.
P:      Qué... ¿Qué, si algo, usted hizo con...con... sobre este particular?
R:      Pues después esto... veía a veces llamadas telefónicas y no cogía las llamadas.
(Transcripción, pág. 96, líneas 20-24 y pág. 97, líneas 1-5)
P:      Como no. Luego del señor eh... González comunicarse con usted, ¿qué, si algo, usted hizo?
R:      Después le...no... no cogía las llamadas para no traer cervezas porque económicamente se me estaba afectando a mí porque eso estaba saliendo de mi dinero, no de el de él.

(Transcripción, pág. 97, líneas 21-24 y pág. 98, líneas 1-3)

[...][18]

Como es sabido, los tribunales apelativos solo podemos intervenir en la apreciación de la prueba cuando se demuestre que el foro primario haya abusado de su discreción. El Tribunal Supremo de Puerto Rico ha señalado varias circunstancias en las cuales se considera que el juzgador ha incurrido en abuso de discreción al adjudicar la controversia, estos son: "(1) [c]uando ... en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, *un hecho material importante que no podía ser pasado por alto* (énfasis nuestro); (2) cuando ... sin justificación y fundamento alguno para ello, le *concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo* (énfasis nuestro); o (3) cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos." *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002).

Tras una lectura minuciosa de la transcripción de la prueba oral colegimos que, el TPI incidió al no tomar en consideración la totalidad del testimonio del señor López Reyes. De esta forma, no tomó en cuenta, hechos materiales importantes que no podían ser pasados por alto.

---

[18] *Alegato Suplementario de All Tools, Inc.,* págs.9-11.

Luego de realizar nuestro análisis sosegado del recurso, no identificamos fundamento alguno que justifique que, la juzgadora de los hechos haya descartado la evaluación de la totalidad de la prueba testifical en este caso. Observamos que, mediante el hecho número 34, el TPI dispone que, en ausencia de prueba documental o demostrativo no procedía la postura del patrono. De esta forma, el TPI parece ignorar la totalidad de la prueba testifical como evidencia directa admisible y sujeta a una debida valoración en aras de determinar, la procedencia de la causa de acción ante su consideración. De conformidad a nuestro ordenamiento jurídico, le corresponde al foro primario evaluar la totalidad de la prueba y establecer si se estableció una justa causa para el despido de un empleado por incurrir en un patrón de conducta impropia o desordenada. Art.2(a) de la Ley Núm.80, *supra.*

La prueba admitida y no impugnada establece que, en varias ocasiones, el señor González Solís, incurrió en una conducta inadecuada al demostrar comportamiento que interrumpía la buena marcha del negocio, así como, ingerir bebidas alcohólicas en presencia de su supervisor, estar bajo sus efectos en presencia de un supervisado y pedirle a un empleado comprar cerveza para su consumo. Prueba clara de ello son los testimonios no impugnados del señor Ramos Alvarado y el señor López Reyes, así como la amonestación escrita. Las comunicaciones verbales y la amonestación escrita fueron realizadas antes de su despido en abril de 2021. La prueba establece que, el señor González Solís continuó incumpliendo las normas de su empleo. Ello, a pesar de haber recibido copia del Reglamento que, preceptúa las reglas de comportamiento y conducta que All Tools exige de sus empleados y de haber sido también orientado y amonestado, previamente a su despido. Vale destacar que, mediante la *Sentencia Parcial* notificada el 6 de junio de 2023, el TPI consignó como hecho incontrovertido

que, el señor González Solís recibió el Reglamento que versa sobre las normas de conducta. El TPI volvió a confirmar, en anticipación al juicio en su fondo, que todos los treinta hechos consignados en dicho dictamen parcial se daban por admitidos. Además, surge de la transcripción de la prueba oral que, en atención a la admisión del Reglamento que fue enmendado previamente, el TPI consignó lo siguiente:

> "Muy bien. Eh... Se va marcar como exhibit eh... uno de la parte querellada el reglamento presentado, solamente a los efectos de que eh... el inciso número diez en la página 20 indica que, "presentarse a trabajar bajo los efectos de sustancias controladas o bebidas embriagantes, usarlas, promover o participar en ventas, introducirlas a las facilidades o vehículos de la empresa, conlleva despido inmediato" se cons...constaba desde el inicio de la relación con ... de la parte querellante con la parte querellada. El resto eh...pues en un...verdad, lo vamos a admitir como que efectivamente es el reglamento que conse...que...utiliza la... la compañía o la empresa de... y que lo viene utilizando en los últimos años. Muy bien. Con las enmiendas pertinentes, pero ese específicamente no ha sido una enmienda."[19]

Lo antes no fue objeto de impugnación o cuestionado mediante el presente recurso ante nos.

La parte apelante solicita de este foro la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, debido a que plantea que se cometió un error manifiesto en la apreciación de la prueba presentada. En estos casos, reconocemos que es facultad del juez del foro primario la adjudicación de credibilidad y la apreciación de la prueba. Sin embargo, esto debe realizarse de manera lógica y conforme a los hechos demostrados en el transcurso del caso, sin que se incurra en una distorsión de la realidad o en la adopción de conclusiones que no se ajustan a la prueba presentada. De ahí que, los tribunales apelativos podamos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, cuando se

---

[19] Transcripción de la prueba oral, págs. 136-137.

demuestre que el juzgador haya incurrido en error manifiesto en la valoración de la prueba.

En este caso, se evidencia que, el foro primario no tomó en consideración la totalidad de la prueba y, en particular, el testimonio del señor López Reyes, aun cuando hace referencia a parte de este en sus determinaciones de hechos. Esto debido a que, a su vez, omitió la otra parte de su testimonio, sin fundamentar en derecho la razón para omitir la valoración de dicha prueba en su análisis de rigor. De otra parte, a pesar de consignar el testimonio del señor Ramos Alvarado sobre cuando vio y presenció al señor González Solís tomando una cerveza en horas laborables dentro de las facilidades de la empresa como un hecho probado, concluyó que era necesario que constara por escrito. Al así proceder, el foro primario cometió un error manifiesto en la valoración de la prueba. La ausencia de un documento no hace menos probable o creíble el testimonio no impugnado del señor Ramos Alvarado que de hecho fue consignado en la determinación número 37. Ante la errónea apreciación de la prueba, amerita nuestra intervención para garantizar una solución justa y acorde con nuestro ordenamiento jurídico.

Por todo lo anterior y tras evaluar detenidamente el expediente de autos, consideramos que el señor González Solís no presentó prueba suficiente para establecer que su despido fue uno arbitrario o caprichoso, sino que éste último descansó en meras alegaciones para sostener su planteamiento a estos efectos. Además, observamos que, su testimonio fue impugnado al retractarse en algunas ocasiones de su versión de los hechos inicial. Añádase a ello que, pese a que el peso de la prueba no descansaba en la parte apelante, All Tools presentó prueba suficiente para demostrar la existencia de justa causa para el despido.

De otra parte, All Tools plantea que, el foro primario erró al aplicar por analogía la *Ley para Reglamentar las Pruebas Para la Detección de Sustancias Controladas en el Sector Laboral Privado*, Ley Núm. 59 *supra.* Además, arguye que, erró el foro primario al determinar que, All Tools no proveyó acomodo razonable o licencia al apelado para atender su condición médica y por requerir evidencia científica y/o pericial para establecer que el despido del apelado estuvo justificado. Se cometieron los errores señalados. Nos explicamos.

En la *Sentencia* emitida por el foro primario, este utiliza la Ley para Reglamentar las pruebas para la detección de sustancias controladas en el sector laboral privado, Ley Núm. 59, *supra,* como analogía para fundamentar su dictamen. Para ello, expresa que, no existe legislación en torno al uso de alcohol en el empleo y procede a detallar el protocolo establecido en el caso de existir sospecha razonable individualizada sobre el uso de sustancias controladas. A su vez, la parte apelada alega que dicho proceder es correcto porque demuestra la deficiencia de los protocolos de All Tools ante este tipo de situaciones.

Sin embargo, la situación de autos es distinguible de lo contemplado por la Núm. 59, *supra.* Como es sabido, la analogía "conlleva aplicar la ley a unos hechos o situaciones no considerados en determinada ley, porque son semejantes o parecidos los allí dispuestos". *Pueblo v. Bonilla*, 148 DPR 486, 503 (1999). En estos casos, cuando el juez aplica la analogía, está reemplazando la voluntad del legislador, "la cual no existe para los hechos que tiene ante sí, basado en su semejanza a los hechos sí tipificados". *Pueblo v. Bonilla*, supra pág. 503.

En este caso, es menester recordar que la controversia versa sobre el despido del señor González Solís y si este fue arbitrario o caprichoso al amparo de la Ley Núm. 80, *supra,* sus

correspondientes enmiendas y la jurisprudencia. Por ello, no es posible aplicar por analogía una ley que versa sobre sustancias controladas y no ha sido contemplada para la situación de autos, por lo que, resulta inaplicable a la causa ante nos.

De otra parte, el TPI sostuvo que, el apelante no le proveyó acomodo razonable a la parte apelada para atender su condición médica y no se presentó evidencia pericial o científica sobre el alcoholismo del señor González Solís para justificar su despido. Sin embargo, no existe ley o jurisprudencia que imponga tal responsabilidad al patrono. Por el contrario, conforme con lo dispuesto en *SLG Torres-Matundan v. Centro Patología*, supra, pág. 941, "al adjudicar este tipo de controversia [debemos abstenernos de] sustituir el criterio del patrono querellado por lo que hubiéramos hecho en su lugar ...". En este tipo de casos, el rol del foro sentenciador "se limita a aplicar el texto de la ley, su jurisprudencia interpretativa, y las normas razonables contenidas en el reglamento del patrono, de haberlo". *SLG Torres-Matundan v. Centro Patología*, supra, pág. 941. Por ello, somos del criterio que se cometieron los errores señalados por la parte apelante.

### IV.

Por los fundamentos que anteceden, revocamos la *Sentencia* apelada, dejamos sin efecto la imposición de honorarios de abogado y desestimamos la *Querella* instada el 24 de abril de 2022 por el señor González Solís.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.  La Juez Barresi Ramos concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones